## THE MODOC.

*(District Court, W. D. Pennsylvania.* October Term, 1883.)

SEAMEN'S WAGES — LIBEL BY MINOR SONS OF A DECEASED PART OWNER — ALLOWANCE REFUSED.

The minor sons of a deceased part owner of a boat libeled her for wages for their services upon her during their father's life-time, when the boat was run by him, the other owner taking no part in her running. The libelants gave evidence to show that there was an understanding between their father and themselves that they were to receive wages, but in fact none of them had been emancipated, and they were supported by their father. When he died he had in his hands earnings of the boat unaccounted for in excess of these wages claims. The surviving owner, who took defense, had no knowledge of the arrangement between the father and his infant sons, and its enforcement against the boat would have prejudiced him. *Held*, that the claims must be disallowed, and the libels dismissed.

In Admiralty.

*Morton Hunter*, for libelants.

*Barton & Sons*, for respondents.

ACHESON, J. The libelants, who are minor children of Capt. J. A. Moore deceased, and respectively of the ages of 19, 16, and 15 years, suing in the name of W. D. Thomas, their next friend, have filed libels against the steam-tug Modoc for wages. Their father was half owner of the boat, and her master, and by him she was run; his co-owner, R. B. Kendall, taking no part in her running. The entire business of the boat, which was that of towing, was transacted by Capt. Moore. He put the libelants on the boat, and for a period of about eight months, and until his death, two of the libelants worked on her as deck hands and one acted as steward. Capt. Moore's death left the financial condition of the boat in this plight, viz.: He had collected for towing $3,523.95, and had disbursed $2,114.17, the balance in his hands being $1,414.78, no part of which has been accounted for, while the boat proved to be incumbered with liens of his creation for supplies, etc., to the amount of $1,098.87, which Kendall, the surviving owner, has been compelled to pay. When Capt. Moore died he had about him $425, which sum it is morally certain (though this is not positively shown) was the boat's money. This fund his widow, who is now a principal witness for the libelants, took possession of and treated as her husband's individual money. Furthermore, it appears that the original cost of the Modoc was $2,300, of which Kendall paid not only his own half, but also $920 of Capt. Moore's share. The united claims of these libelants are $546.80, and, if sustained, it is certain that they must be paid out of Mr. Kendall's own pocket. Of these claims he had no knowledge during Capt. Moore's life-time, the libels being filed after his death.

In view of the foregoing facts this attempt of Capt. Moore's family to charge the Modoc strikes me as most ungracious, and deserving of no favor. Must these demands be sustained as valid liens? The libelants, as we have seen, were all infants, and none of them had been emancipated by their father. When not on the boat, they all lived with their father as one family, they paying no boarding, it is shown. Presumably they were supplied by him with clothing and other necessaries. He was, then, entitled to their services; and their earnings, although for maritime services, were legally his. *Plummer* v. *Webb*, 4 Mason, 380. The libelants endeavor to remove this legal obstacle out of their way, and their mother testifies that she heard her husband repeatedly say to the libelants "that he intended to let their wages stand for an interest in the boat,—he did not want to make any use of it for himself; that he wanted to let it stand that the boys could get an interest in the boat for themselves." The libelants severally testify that their father often told them during their service on the boat that when they earned and got their money they could do with it what they pleased; that they were to have it to do what they liked,—either to take an interest in the boat or otherwise

use it.   And Thomas Donovan testifies that on one occasion, when the libelants were complaining of late work, their father said to them, "If you don't do it I will have to get some others who will, as I have to pay you the same as any one else;" and that at other times, when the boys were indulging in "a little growl," their father would say "that their money was in the office, the same as mine, whenever they wanted it;" and this witness adds that Capt. Moore told him "he did not want the boys' wages; that he would pay them the same as me, and that they could do what they liked with it."   But, if all this be true, what does it amount to?   What have we here but expressions of the father's intentions in respect to the earnings of his sons?   Those earnings were none the less his after these declarations than they were before.   An express promise by the father, under the circumstances of this case, to pay these infants their wages while in his employ upon the boat, would have lacked the element of consideration, and, it seems to me, could not have been enforced against him.   Much less should the alleged understanding be enforced in this proceeding *in rem* to the prejudice of the surviving owner of the boat, who was in total ignorance of such arrangement.   *Kauffelt* v. *Moderwell*, 21 Pa. St. 222, 224.   When Capt. Moore died he had in his hands of the boat's moneys over $1,400, which were applicable to the wages earned by his infant sons, and the justice of the case requires, at least as between Kendall and the libelants, that their wages should be treated as paid.   Id.

I have not overlooked the fact that in the boat's time-book, as kept by Capt. Moore, accounts with the libelants, respectively, appear, similar to the other hands' accounts.   But this was necessary for proper settlements between the owners of the boat, and is not at all inconsistent with the father's claim to the earnings of his infant sons.

Let a decree be drawn dismissing the original and intervening libels, with costs.